# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

    v.

**ALEXANDRA GRACE WORKMAN,**

    Defendant.

Case No. 1:19-cr-71(22)
JUDGE DOUGLAS R. COLE

## OPINION & ORDER

This cause comes before the Court on Defendant Alexandra Grace Workman's Second Motion for Bond (Doc. 397), which requests the Court to immediately release her from pretrial detention. For the reasons below, the Court **DENIES** Workman's Motion. (Doc. 397).

## BACKGROUND

On June 19, 2019, a grand jury charged a two-count indictment against Workman for (1) conspiracy to possess with intent to distribute and conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846; and (2) distribution and possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). (*See* Indictment, Doc. 1). A week later, on June 26, 2019, Workman was called before Magistrate Judge Litkovitz for her Initial Appearance. (Doc. 75). The Court appointed counsel for Workman, and then the Government moved for pretrial detention. (*Id.*). Accordingly, Magistrate Judge Litkovitz continued Workman's detention hearing and arraignment on indictment until July 1, 2019, i.e., three business days later. (*Id.*).

At those proceedings, Workman, represented by counsel, pled not guilty and waived her right to a detention hearing, subject to reconsideration at a later date by Judge Barrett, who presided over this case at that time. (Doc. 121). Magistrate Judge Litkovitz then ordered Workman to remain detained pending her trial. (*Id.*; Doc. 122).

A month later, on August 1, 2019, Workman filed a Motion for Bond requesting the Court immediately release her from custody as Workman was then eight-months pregnant, had no prior criminal history (yet had a pending criminal case in Brown County), and had family willing to house and support her and her soon-to-be-born baby, if released. (Doc. 158). Roughly a month after Workman had filed her Motion, on September 6, 2019, the Court denied the Motion upon reviewing her Pretrial Services Report and consulting with the Pretrial Services Office. (Doc. 175). This case was then reassigned to the undersigned judge on January 9, 2020. (Doc. 368).

On April 23, 2020, Workman filed her Second Motion for Bond (Doc. 397), which asks the Court to release her from pretrial detention. (*Id.*). Roughly two months later, on June 25, 2020, the Government opposed Workman's Second Motion. (Doc. 422). Thus, Workman's Second Motion is now ripe for review.

## DISCUSSION

In sum, Workman wants the Court to temporarily release her from pretrial detention because of the risks posed by COVID-19.[1] Thus, the only issue before the

---

[1] At least that is the bulk of Workman's Second Motion. (Mot. at 1, #1160). The remaining portion deals with the arguments that Workman previously asserted in her First Motion for Bond, which she incorporates here. (*Id.*). As discussed above, in her First Motion, Workman asked the Court to release her from custody because she was—at the time—eight-months pregnant. But given that Workman's Second Motion states that she is no longer expecting (*id.* at 2, #1161), the arguments that she asserted her First Motion carry no water here.

2

Court is whether Workman has demonstrated, as required by 18 U.S.C. § 3142(i), that temporary release is necessary for her to prepare her defense or "for another compelling reason." Here, Workman bears the burden of persuasion. *United States v. Smoot*, No. 2:19-cr-20, 2020 WL 1501810, *2 (S.D. Ohio March 30, 2020) (the defendant "bears the burden of establishing circumstances warranting release under § 3142(i)") (citation omitted). She fails to satisfy that burden here.

A.  **Workman Has Not Presented A "Compelling Reason" For The Court To Temporarily Release Her Under 18 U.S.C. § 3142(i).**

Workman moves the Court to temporarily release him from pretrial detention due to concerns relating to the COVID-19 pandemic. As discussed above, under 18 U.S.C. § 3142(i), courts may temporarily release a defendant if she establishes that such release is necessary for a "compelling reason." *Id.* But Workman has failed to show such a "compelling reason" here.

Workman argues that her inmate status and the conditions of her current facility render her at a heightened risk of illness and death, and therefore justify her release under § 3142(i). The Court finds that the guidance below from a recent decision in this District provides a helpful framework for analyzing that claim:

> The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i). In making that determination, the [Court] will evaluate at least the following factors:
>
> (1) the original grounds for the defendant's pretrial detention,

3

> (2) the specificity of the defendant's stated COVID-19 concerns,
>
> (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and
>
> (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.
>
> The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i).

*Smoot*, 2020 WL 1501810 at *2 (quoting *United States v. Clark*, No. 19-40068-01, 2020 WL 1446895, *3 (D. Kan. March 25, 2020)). The Court will use this guidance as the framework for reviewing Workman's Second Motion.

### 1. The Original Grounds For Workman's Detention.

This factor incorporates the Court's previous findings that Workman poses risks of both non-appearance and danger to the community. Magistrate Judge Litkovitz and Judge Barrett both made those findings. They did so based upon the Pretrial Services Report, which likewise found those conditions to be present here. In her newest filing, Workmand does not present any new evidence regarding these finding, or otherwise provide any new arguments that these findings were incorrect. Accordingly, this factor favors Workman's detention.

### 2. The Specificity Of Workman's Stated COVID-19 Concerns.

"The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify his release." *Smoot*, 2020 WL 1501810, at *3 (citation omitted). Workman asserts that she is housed in the Boone County

(Kentucky) Jail, which, "[u]pon information and belief," had quarantined an entire block of the jail (at the time she filed her Second Motion). In contrast, the United States Marshal's Office has confirmed that there are no detainees at Boone County Jail who have currently tested positive for COVID-19 (as of July 8, 2020). And, although Workman asserts that one nurse in the Boone County Jail was sent home after testing positive for COVID-19, she also admits that there were no confirmed cases at the Jail when she filed her Second Motion. Moreover, Workman states that the Jail has also reduced exposure to sources of the virus from outside the institution by suspending all visits through a "24 hour [sic] lockdown." (Mot. at 1, #1160). Thus, even if one nurse has contracted the virus, the Boone County Jail has taken precautionary measures to contain the virus from spreading within the Jail and to prevent visitors from bringing the disease to the Jail. Accordingly, the likelihood of a widespread outbreak there remains a "mere possibility."

Separately, even in a wider outbreak were to occur, Workman does not explain how she personally may be at an increased risk because of any personal health characteristics. Rather, Workman asserts that, because she gave birth in late-September 2019, "it is [her] belief that she has a compromised or reduced immune system as a result … ." (*Id.* at 2, #1161). Her unsubstantiated "belief" that she is at a heightened risk is not sufficient to meet her burden of persuasion. Thus, this factor likewise favors detention.

### 3. The Effect Of Workman's Release Plan On Herself.

Workman says that she "has family and friends with whom she could stay," if released. (Def.'s Mot. at 2, #1161). Without any specificity regarding her plans, though, the Court has no way of determining whether her release plan poses a risk to herself or her friends and family. For example, her motion lacks any information about any "screening practices" or "concrete COVID-19 precautions" that she plans to implement. *Smoot*, 2020 WL 1501810, at *3 (citation and quotation omitted). In contrast (and as discussed above), access to detention facilities is strictly monitored and enforced. And while there are no current confirmed COVID-19 cases among detained individuals at the Boone County Jail, the Kentucky Department of Health reports that there are 660 confirmed cases of COVID-19 in Boone County. (Kentucky Dep't of Pub. Health COVID-19 Dashboard, July 7, 2020, https://bao.arcgis.com/covid-19/us/county/21015.html). Thus, releasing Workman may actually increase the likelihood of her contracting (or spreading) the virus. In short, given that the Boone County Jail has implemented precautionary measures that allow for monitoring individuals and isolating anyone suspected of catching the virus from the general populations of both the County and the Jail, coupled with the apparent success of those precautions to date, this factor supports detention.

### 4. The Effect Of Workman's Release Plan On The Public.

Finally, the Court considers the impact of Workman's release on third parties. To start, Workman offers no explanation as to how her presence in the Boone County Jail exacerbates COVID-19 concerns or heightens the risk of the disease to others in

6

the facility. Conversely, as already noted, Workman has not provided a release plan, so it is difficult to assess the impact her release would have on risks for others—particularly those outside the facility. Presumably, if Workman were released, she would have potentially unfettered contact with others who visit wherever she plans to stay. And, if she were released and then violated the terms of her release—which the Court has previously found she at risk of doing—Workman would also "pose[] potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if … taken back into custody." *Clark*, 2020 WL 1446895, at *7. Thus, the Court finds that Workman's requested temporary release would present a greater risk of spreading COVID-19 than her continued detention at the Boone County Jail.

In conclusion, the four identified factors that guide the analysis as to whether Workman has established that the COVID-19 pandemic constitutes a "compelling reason" to temporarily release her under § 3142(i) all favor her continued detention.

## CONCLUSION

For the reasons above, the Court concludes that Workman has not established a "compelling reason" sufficient to persuade the Court that her temporary release is necessary, as required by § 3142(i). Accordingly, the Court **DENIES** Workman's Second Motion for Bond. (Doc. 397).

7

**SO ORDERED.**

July 9, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**